IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

OSCAR ARMANDO SARRES MENDOZA, §
(A-072-810-778), §
　　　　　　　　　　　　　　　　§
　　　　　　　Petitioner, §
　　　　　　　　　　　　　　　　§　　CIVIL ACTION NO. H-18-3012
v. §
　　　　　　　　　　　　　　　　§
WILLIAM BARR,[1] et al., §
　　　　　　　　　　　　　　　　§
　　　　　　　Respondents. §

## MEMORANDUM OPINION AND ORDER

Petitioner Oscar Armando Sarres Mendoza has filed a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition") (Docket Entry No. 1), seeking release from detention by immigration officials. He has also filed an amended version of that pleading, entitled Verified Petition for a Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief ("Amended Petition") (Docket Entry No. 13).

Now pending is Respondents' Motion to Dismiss and Response in Opposition to Petitioner's Petition for a Writ of Habeas Corpus ("Respondents' Motion") (Docket Entry No. 16). Petitioner has filed a Response ("Petitioner's Response") (Docket Entry No. 19)

---

[1]The petitioner originally designated former United States Attorney General Jeff Sessions as the lead respondent. The court automatically substitutes his successor, William Barr, pursuant to Fed. R. Civ. P. 25(d).

and a Motion for Leave to File an Amended Complaint (Docket Entry No. 22). After considering all of the pleadings and the applicable law, the court concludes that this case must be dismissed for the reasons explained below.

## I. **Background**

Petitioner is a native and citizen of Honduras, who first entered the United States illegally in 1993.[2] An immigration judge in Harlingen entered an order of removal against Petitioner on February 8, 1994.[3] Petitioner was deported more than once,[4] only to return illegally to the United States.[5] In 2006, Petitioner was convicted of aggravated robbery in violation of Texas law and sentenced to 20 years in state prison.[6] He was also convicted of resisting arrest.[7]

Petitioner was taken into custody by Immigration and Customs Enforcement ("ICE") most recently on May 17, 2017, and placed in removal proceedings.[8] Officials originally sought to deport

---

[2]Petition, Docket Entry No. 1, p. 3.

[3]Id. at 3-4.

[4]See Sworn Declaration of Howard Solomon, Docket Entry No. 16-2, pp. 2-3.

[5]See Petition, Exhibit A, Oral Decision of the Immigration Judge, Docket Entry No. 1, pp. 17-19.

[6]Id. at 19.

[7]Id.

[8]Petition, Docket Entry No. 1, p. 4.

Petitioner by reinstating the previous order of removal entered against him in 1994.[9] After Petitioner successfully challenged that order, which was entered against him in absentia, officials filed new charges of deportability based on his criminal record.[10] Petitioner provides the transcript of an oral decision by a local immigration judge, who found Petitioner ineligible for relief in the form of cancellation of removal or for asylum, due to Petitioner's prior conviction for aggravated robbery, which constitutes a "crime of violence" that qualifies as an "aggravated felony" and is also considered a "particularly serious offense" under the immigration statutes.[11] After concluding that no waiver or other basis for relief applied, the immigration judge ordered Petitioner to be deported on June 19, 2018.[12]

Petitioner, who has filed an appeal from the order of removal to the Board of Immigration Appeals ("BIA"),[13] has been "continuously detained" by immigration officials during his removal

---

[9]See Sworn Declaration of Howard Solomon, Docket Entry No. 16-2, p. 3.

[10]Id.

[11]Petition, Exhibit A, Oral Decision of the Immigration Judge, Docket Entry No. 1, pp. 26-33.

[12]Id. at 33-45.

[13]See Respondents' Motion, Exhibit B, BIA Decision Search, Docket Entry No. 16-2, p. 1 (reflecting that his appellate brief was filed on September 10, 2018).

proceedings.[14] On August 28, 2018, Petitioner filed his original habeas corpus Petition under 28 U.S.C. § 2241, seeking relief from "continued unlawful detention."[15] On October 11, 2018, Petitioner filed an Amended Petition, which also challenges the legality of his continued confinement while awaiting removal.[16] In both the original Petition and the Amended Petition, Petitioner argues that his continued detention violates due process because his removal to Honduras is not reasonably foreseeable, and he seeks immediate release from custody pursuant to Zadvydas v. Davis, 121 S. Ct. 2491 (2001).[17] In addition, Petitioner seeks two billion dollars in compensatory damages for his wrongful confinement.[18]

The respondents, including the United States Attorney General, former Secretary of the Department of Homeland Security John Kelly, who has been succeeded by Kirstjen Nielsen, ICE Field Office Director Patrick D. Contreras, and Warden Robert Lacy, Jr., move to dismiss, noting that Petitioner fails to state a valid claim under Zadvydas because he has appealed the decision entered by the immigration judge on June 19, 2018, to the BIA, meaning that his

---

[14]Petition, Docket Entry No. 1, p. 3.

[15]Id. at 1.

[16]Amended Petition, Docket Entry No. 13, pp. 1-11.

[17]Petition, Docket Entry No. 1, pp. 6-9; Amended Petition, Docket Entry No. 13, pp. 5-7.

[18]Amended Petition, Docket Entry No. 13, p. 7.

-4-

order of removal is not yet "final."[19] The respondents argue further that Petitioner's continued confinement is authorized by 8 U.S.C. § 1226(c), which mandates detention during removal proceedings for aliens who have committed a criminal offense that renders them deportable.[20] Because Petitioner's continued detention is authorized, the respondents argue that he is not entitled to habeas corpus relief because he cannot establish the requisite constitutional violation.[21]

Petitioner has filed a Response to the Respondents' Motion,[22] and he also requests leave to file an amended complaint to assert claims about the conditions of his confinement.[23] As explained to Petitioner previously, claims concerning a prisoner's conditions of confinement may not be brought in a habeas corpus proceeding, and

---

[19] Respondents' Motion, Docket Entry No. 16, pp. 2, 4.

[20] Id. at 4-5.

[21] Id. at 6-10. The respondents also note that the correct respondent is Petitioner's immediate custodian, Warden Robert Lacy Jr., and that the other government officials listed in the Petition are not properly named. Id. at 5-6. The court agrees. See Rumsfeld v. Padilla, 124 S. Ct. 2711, 2720 (2004) (reaffirming that in challenges to "present physical confinement" under 28 U.S.C. § 2241, it is "the immediate custodian, not a supervisory official who exercises legal control," who is the proper respondent); 28 U.S.C. § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained.").

[22] Petitioner's Response, Docket Entry No. 19, pp. 1-11.

[23] Petitioner's Motion for Leave to File an Amended Complaint, Docket Entry No. 22, pp. 1-23.

are actionable, if at all, in a civil rights action.[24] Petitioner's motion for leave to amend will be denied, and this case will be dismissed for reasons discussed in more detail below under the applicable standards of review.

## II. **Standards of Review**

### A. **Rule 12(b)(1)**

The respondents move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005) (citations omitted). In considering a challenge to subject matter jurisdiction, the district court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." Id. The petitioner bears the burden of demonstrating that subject matter jurisdiction exists. See Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).

### B. **Rule 12(b)(6)**

The respondents also move to dismiss for failure to state a

---

[24]See Order dated Nov. 5, 2018, Docket Entry No. 18, pp. 1-2 (denying Petitioner's previous request for leave to amend). See also, e.g., Carson v. Johnson, 112 F.3d 818, 820-21 (5th Cir. 1997); Cook v. Texas Dep't of Criminal Justice Transitional Planning Dep't, 37 F.3d 166, 168 (5th Cir. 1994).

claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To withstand a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). If the complaint has not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. Id. at 1974.

The court is mindful of the fact that plaintiff proceeds pro se in this case. Courts are required to give a pro se litigant's contentions, however inartfully pleaded, a liberal construction. See Erickson v. Pardus, 127 S. Ct. 1081, 2200 (2007) (citing Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)); see also Haines v. Kerner, 92 S. Ct. 594, 595-96 (1972) (noting that allegations in a pro se complaint, however inartfully pleaded, are held to less stringent standards than formal pleadings drafted by lawyers). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965).

### III. Discussion

**A. Petitioner's Claim for Monetary Damages**

As an initial matter, Petitioner's claims for relief are governed by the federal habeas corpus statutes, which authorize release from confinement where a prisoner can demonstrate that he

is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Compensatory or monetary damages are not available in a habeas corpus proceeding. See Preiser v. Rodriguez, 93 S. Ct. 1827, 1838 (1973) ("In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy."); see also Muhammad v. Close, 124 S. Ct. 1303, 1304 (2004) (distinguishing between a habeas corpus challenge to the validity of confinement and a damages action concerning circumstances of confinement under 42 U.S.C. § 1983). Therefore, Petitioner's request for two billion dollars in compensatory damages must be dismissed for failure to state a claim upon which relief may be granted.

**B.   Petitioner's Claim Under Zadvydas**

Petitioner claims that he is entitled to relief because his continued detention violates Zadvydas v. Davis, 121 S. Ct. 2491, 2504-05 (2001), which requires an immigration detainee's release under certain circumstances, after the expiration of a presumptively reasonable six-month period of detention, where there is no prospect of removal in the foreseeable future. This claim is without merit.

Once a removal order becomes "final," the Attorney General has ninety days to effect an alien's departure from the United States. 8 U.S.C. § 1231(a)(1); Andrade v. Gonzales, 459 F.3d 538, 543 (5th

Cir. 2006). Aliens may be detained during the removal period. See 8 U.S.C. § 1231(a)(2). If an alien is not promptly removed within the removal period, then he or she may be eligible for supervised release until removal can be accomplished. See id. at § 1231(a)(3). Certain inadmissible or criminal aliens "may be detained beyond the removal period," or released under terms of supervision, while efforts continue. See id. at § 1231(a)(6).

In Zadvydas, the Supreme Court held that the Fifth Amendment Due Process Clause does not permit indefinite detention lasting beyond six months past the ninety-day removal period found in § 1231(a). See Zadvydas, 121 S. Ct. at 2498, 2504-05. After the expiration of six months, an alien may seek his release from custody by demonstrating a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" Id. at 2505. The alien bears the burden of proof in showing that no such likelihood of removal exists. Id. Once this has been shown, the burden shifts to the government, which "must respond with evidence sufficient to rebut that showing." Id.

Where an alien has filed an appeal from the order of removal, the removal order does not become final for purposes of triggering the ninety-day removal period until after the BIA issues a decision affirming the order of removal. See 8 U.S.C. § 1101(a)(47)(B))(i). Petitioner's order of removal remains on appeal to the BIA. As a result, his order of removal is not yet final and the ninety-day

removal period has not yet commenced. See 8 U.S.C. § 1231(a)(1)(B)(i). Under these circumstances, the holding in Zadvydas does not apply because Petitioner cannot show that he has been held for an unreasonable period of time past the expiration of the removal period. Accordingly, Petitioner is not entitled to relief on this claim.

C.  **Petitioner's Continued Detention is Lawful**

The respondents argue further that Petitioner's continued detention is lawful under 8 U.S.C. § 1226(c), which makes it mandatory for the Attorney General to detain any alien who has been convicted of a class of offenses.[25] It appears that Petitioner's prior Texas conviction for aggravated robbery qualifies him for mandatory detention under § 1226(c)(1)(B), because it is an offense that is deportable as an aggravated felony under § 1227(a)(2)(A)(iii). See, e.g., United States v. Garrido, 736 F. App'x 77, 78 (5th Cir. 2018) (holding that a Texas conviction for aggravated robbery qualifies as a "crime of violence" under 18 U.S.C. § 16(a) and an aggravated felony under the immigration statutes). There is no limit on the length of detention under § 1226(c), subject to the conclusion of removal proceedings.[26] See

---

[25]Respondents' Motion, Docket Entry No. 16, pp. 4, 6-7.

[26]The respondents note that any delay in completing the removal process is attributable to the Petitioner, who has challenged the
(continued...)

Jennings v. Rodriguez, 138 S. Ct. 830, 846-47 (2018).

The respondents explain that an alien may challenge his detention under § 1226(c) by requesting a hearing before the immigration judge, known as a Joseph hearing, in an effort to obtain release on bond while awaiting removal.[27] The alien may appeal any adverse decision made during a Joseph hearing.[28] Petitioner did not avail himself of that administrative process before filing his Petition in this case.[29] Moreover, neither the original Petition nor the Amended Petition raises a claim that Petitioner has been improperly denied a bond or a bond determination.[30]

---

[26](...continued)
removal order by filing an appeal with the BIA. See Respondents' Motion, Docket Entry No. 16, pp. 8-9. Petitioner cannot be deported while his appeal is pending. See id. at 9.

[27]See Respondents' Motion, Docket Entry No. 16, p. 6, n. 38 (citing In re Joseph, 22 I&N Dec. 799 (BIA 1999); 8 C.F.R. § 1003.19(h)(2)(ii)).

[28]See id. at 6, n. 39 (citing 8 C.F.R. §§ 1003.1(b)(7), 1003.19(f), 1003.38(a)).

[29]Petitioner appears to have requested a bond, which was denied on November 29, 2018, and he has filed an appeal from that decision. See Notice of Appeal from a Decision of an Immigration Judge, Docket Entry No. 21, p. 1 (appealing a bond decision made by the immigration judge on November 29, 2018). That appeal, which was received by the BIA on December 10, 2018, remains pending. See Notice from Petitioner, Docket Entry No. 23, pp. 1-2. Petitioner provides no other details about his bond proceeding.

[30]See Petition, Docket Entry No. 1, pp. 1-9; Amended Petition, Docket Entry No. 13, pp. 1-11.

Petitioner does not otherwise demonstrate that he has been improperly classified as an alien subject to mandatory detention under § 1226(c) or that he has been wrongfully denied a bond as a result. To the extent that his pleadings could be construed to present this type of claim, the respondents correctly note that Petitioner has not yet exhausted available administative remedies as required before seeking federal habeas relief with respect to such a claim. See Hinojosa v. Horn, 896 F.3d 305, 314 (5th Cir. 2018) ("The exhaustion . . . doctrine requires not that only administrative remedies selected by the [petitioner] be first exhausted, but instead that all those prescribed administrative remedies which might provide appropriate relief be pursued prior to seeking relief in the federal courts.")(internal quotation marks omitted). For all of these reasons, the Petition must be dismissed.

### IV. Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1. The Respondents' Motion to Dismiss and Response to Petitioner's Petition for a Writ of Habeas Corpus (Docket Entry No. 16) is **GRANTED**.

2. The Petition for a Writ of Habeas Corpus (Docket Entry No. 1) and the Verified Petition for a Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (Docket Entry No. 13) filed by Oscar Armando Sarres Mendoza are **DENIED** and this action will be **DISMISSED WITH PREJUDICE**.

3. Petitioner's Motion for Leave to File an

Amended Complaint (Docket Entry No. 22) is **DENIED**.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 15th day of March, 2019.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE